**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

GERRARD J. BLAKE,

                                                        Plaintiff,

        v.                                                                                No. 09-CV-266
                                                                                                (DNH/DRH)

BRIAN FISCHER, Commissioner of New York State
Department of Correctional Services; GLENN
GOORD, Former Commissioner of New York State
Department of Correctional Services; GEORGE B.
ALEXANDER, Chairman of New York State Division
of Parole; KENNETH S. PERLMAN, Deputy
Commissioner for Program Services for New York
State Department of Correctional Services; JOHN H.
NUTTALL, Former Deputy Commissioner for Program
Services for New York State Department of
Correctional Services; EDWIN H. ELFELDT,
Coordinator for Sex Offender Counseling and
Treatment Program for New York State Department of
Correctional Services; L. WEINGARTNER, Deputy
Superintendent for Programs at Five Points
Correctional Facility; KATHLEEN ALTMAN,
Correctional Counselor at Five Points Correctional
Facility; TOUSIGNANT, Parole Officer at Upstate
Correctional Facility; KRATZENBERG, Parole Officer
at Great Meadows Correctional Facility; SCROGGY,
Correctional Counselor at Great Meadows Correctional
Facility; K. LaPOLT, Deputy Superintendent for
Programs at Great Meadows Correctional Facility;
JOSEPH T. SMITH, Superintendent of Shawangunk
Correctional Facility; NEVILLE ANDREWS, Deputy
Superintendent for Programs at Shawangunk
Correctional Facility; ED RUDDER, Sex Offender
Program Psychologist at Shawangunk Correctional
Facility; STACY BODE, Clinical Social Worker for
Sex Offender Program at Shawangunk Correctional
Facility; DICK FITCHETT, Former Senior Counselor
for Sex Offender Program at Shawangunk
Correctional Facility; B. McCULLOUGH, Senior
Counselor for Sex Offender Program at Shawangunk
Correctional Facility; FRANK CHIAPPERINO,
Correctional Counselor for Sex Offender Program at
Shawangunk Correctional Facility; JOHN TOWNLEY,
Correctional Counselor for Sex Offender Program at

Shawangunk Correctional Facility; and E.
TRINIDAD, Former Correctional Counselor for Sex
Offender Program at Shawangunk Correction
Facility, individually and in their official capacities,

                                            Defendants.

_____

**APPEARANCES:**                    **OF COUNSEL:**

REISMAN, RUBEO & McCLURE, LLP       MARK IRWIN REISMAN, ESQ.
Attorneys for Plaintiff
151 Broadway
Hawthorne, New York 10532

HON. ANDREW M. CUOMO               JAMES J. SEAMAN, ESQ.
Attorney General for the            Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

   Plaintiff Gerard Blake ("Blake"), an inmate formerly in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

1983 alleging that defendants, twenty-one present and former DOCS employees, violated

his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments concerning

requirements that Blake participate in sex offender treatment while incarcerated.  Compl.

(Docket No. 1).  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6).  Docket No. 40.  Blake opposes the motion.  Docket No. 52.  For the following

_____

   [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

reasons, it is recommended that defendants' motion be granted in part and dismissed in part.

## I. Background

The facts are related herein in the light most favorable to Blake as the non-moving party. See subsection II(A) infra.

On October 29, 2003, Blake pleaded guilty to one count of promoting prostitution in the third degree, in violation of N.Y. Penal Law § 230.25(1)[2], and was sentenced as a second felony offender to a term of two and a quarter to four and a half years.  Compl. ¶¶ 37-39. On February 6, 2004, Blake was received into DOCS custody at Downstate Correctional Facility.  Id. ¶ 40.  An initial assessment of Blake's needs during incarceration and parole conditions pending release ("EEP") suggested training in transitional services, alcohol and substance abuse, and vocational training and work assignments.  Id.  ¶¶ 41-42.  The EEP was confirmed and reiterated by DOCS staff when Blake was transferred to Sing Sing Correctional Facility.  Id.  ¶¶ 43-44.  Neither EEP included any reference to the need for a sex offender program or parole conditions.  Id.  ¶¶ 40-45.  Blake's appearance at the parole board on March 16, 2004 resulted in a denial of parole and leave to re-apply in two years. Id.  ¶ 46.

On May 29, 2004, Blake was transferred to Five Points Correctional Facility ("Five Points").  Compl. ¶ 47.  Upon arrival, Blake was told by defendant counselor Altman that his

---

[2] Promoting prostitution requires proof of the intentional "[a]dvance[ment] or profit[] from prostitution by managing, supervising, controlling or owning, either alone or . . . with others, . . . a prostitution business . . . involving prostitution activity by two or more prostitutes . . . ."  N.Y. Penal Law § 230.25(1).

3

EEP had remained the same as that originally set by the counselors at Downstate, which still did not include provisions for a sex offender program or parole conditions.  Id.  ¶ 48. After the meeting, Blake corresponded with the alcohol and substance abuse coordinator and succeeded in having that condition removed from his EEP.  Id.  ¶¶ 48-50.

On March 11, 2005, Blake was involved in an altercation with another inmate.  Compl. ¶ 51.  On April 1, 2005, during his interview with Altman, Blake was informed that aggressive replacement training ("ART") was recently included in his EEP due to his involvement in the altercation.  Id.  ¶ 52.  Blake disagreed with the decision and terminated the interview.  Id. Shortly thereafter Blake filed a grievance against Altman for her decision to include ART in his EEP.  Id. ¶53.  Blake also corresponded with defendant Weingartner, the Deputy Superintendent for Programs, about the inclusion of ART into his EEP and on May 9, 2005, Weingartner advised that Blake's case was being referred to the DOCS Sex Offender Program ("SOP").  Id.  ¶ 54-55; see also Dkt. No. 40-7 at 32 (explaining that Blake's offense of promoting prostitution "is considered an offense with inherent violent characteristics in that the females who perform this activity do so under the control of another, and frequently do so under the threat of violence").  Blake also contacted defendant Goord, then the Commissioner of DOCS, again expressing concern about Altman and Weingartner's decisions to have him participate in ART and SOP.  Id.  ¶ 57.

On June 10, 2005, Blake received a response from defendant Nuttal, the former DOCS Deputy Commissioner for Program Services, on Goord's behalf defending the decision to enroll Blake in SOP and explaining that

> [w]hile it is understood that your instant offense is not a registerable
> sex offense per penal law Article 130, your instant offense did
> involve sexual offending behavior in which you profited from

4

> prostitution; therefore, based on your sexual exploitation of women for profit, the recommendation to participate in the Sex Offender Counseling Program is appropriate as is the need to participate in the Aggression Replacement Training (ART) Program.

Dkt. No. 40-7 at 39; <u>see also</u>  Compl. ¶ 59.  In September 2005, after being advised that refusal to participate in the SOP would lead to a denial in earned eligibility credit ("EEC"), possibly losing good time credits, and another delay of eligibility for parole, Blake refused to attend and participate in SOP.  Compl. ¶ 60.  In September 2005, Blake filed an Article 78 proceeding[3] in Albany County regarding the appropriateness of being placed in SOP.  Compl. ¶ 61; <u>see also</u> Dkt. No. 40-7.[4]  The petition was ultimately dismissed.  Compl. ¶ 61; Dkt. No. 40-8 at 2 ( "[T]he court finds that the determination of the respondents as to both [ART and SOP] programs was rational and fully supported by the record below.").

On December 18, 2005, Blake was transferred to Upstate Correctional Facility ("Upstate") whereupon he was informed that his EEP now contained both ART and SOP.

---

[3]N.Y. C.P.L.R. art. 78 establishes the procedure for state judicial review of the actions and inactions of state and local government agencies and officials.

[4] Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  However, there are instances where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ."  <u>Faulkner v. Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted). Blake has lost the documents related to the Article 78; however, Blake still referenced and provided documents which were part of the Article 78 motion.  <u>See</u> Compl.  Additionally, at least a portion of Blake's current complaint incorporates the same allegations and relies upon the same facts proffered in the Article 78.  As defendants' counsel was also the counsel involved in the Article 78 proceeding, he has provided a copy of the proceeding with his motion papers.  Dkt. Nos. 40-7, 40-8.  As the Article 78 was incorporated by reference, defendants' submission of the entire proceeding has been considered in the present motion.

Compl. ¶¶ 62-63.  On December 30, 2005, Blake was interviewed by defendant Tousignant, a parole officer at Upstate, who, Blake later determined, recommended sex offender treatment among the special parole conditions to which Blake would be subject if released on parole.  Id.  ¶¶ 64, 67.

On February 12, 2006, Blake was transferred to Auburn Correctional Facility (Auburn").  Compl. ¶ 65.  Shortly thereafter, Blake's EEC was denied based upon his refusal to participate in the SOP.  Id.  ¶ 68.  Additionally, on February 28, 2006, Blake was denied parole release and ruled eligible to re-apply in another two years.  Id.  ¶ 69.  The decision made "reference to [Blake's] record indicating a sex offense occured [sic] and factored into its decision . . . [when Blake] was denied his EEC."  Id.  On March 13, 2006, Blake requested a revision of his EEP.  Id.  ¶ 70.  The request was refused.  Id.

On February 16, 2007, after being temporarily incarcerated at Upstate, Blake was transferred to Great Meadow Correctional Facility ("Great Meadow").  Compl. ¶¶ 71, 73.  Upon arrival, Blake was interviewed by defendant Scroggy, a counselor, who informed Blake "that due to changes in the law, [Blake's] crime of commitment was now a sex offense."  Id.  ¶ 74.  Blake agreed to go on the waiting list for the SOP program.  Id.  In December of 2007, Blake was interviewed by defendant Kratzenberg, a parole officer, and asked why the other co-defendants who pleaded guilty to promoting prostitution with Blake were not recommended for sex offender conditions.  Id.  ¶ 75.  Kratzenberg could not answer the question or change the recommendations.  Id.

On January 20, 2008, Blake wrote to defendant LaPolt, the Great Meadow Deputy Superintendent for Progams, requesting reevaluation of his EEP.  Compl. ¶ 76.  Additionally, due to another altercation in which he was involved, Blake agreed to attend

ART.  Id.  Blake entered the ART program on February 25, 2008.  Id.  ¶ 79.  LaPolt refused

to reevaluate Blake's EEP.  Id.  Shortly thereafter, Blake received notification that his EEC

was again denied due to his "overall unacceptable level of program attendance," namely

missing ninety days of programs from February 2006 to January 2008.  Id.  ¶ 77; Dkt. No. 1-

1 at 4.  Parole was again denied on February 19, 2008, with his eligibility to re-apply again

extended for another two years, citing Blake's denial of EEC as a determinative factor.

Compl. ¶ 78.

On February 26, 2008, Blake was transferred to Shawangunk Correctional Facility

("Shawangunk") where he was informed he would be "participating in the new Sex Offender

Counseling and Treatment Program ["SOCTP"]."  Compl. ¶¶ 80-81.  When Blake met with

defendant Trinidad, formerly a counselor, on February 27 for an initial interview, Trinidad

presented Blake with two waivers, a waiver of confidentiality and a waiver for access to

pornography, photographs and other material, and told Blake that if he did not sign the

waivers he would face civil commitment and lose good time credits.  Id.  ¶ 82.  On at least

three other occasions, February 29, March 5, and April 1, Blake was approached by

defendants Trinidad, Townley, Chiapperion, and Fitchett, all counselors, and was told that

he must sign the two waivers; Blake refused.  Id.  ¶¶ 84, 86, 96.

On March 10, 2008, Blake was informed by defendant McCullough, a counselor, that he

would be starting the SOCTP on March 17.  Compl. ¶ 89.  At that time Blake also requested

to be enrolled in a second program as a recreation aide, but the request was denied insofar

as the only other program spots available to Blake were educational, volunteer vocational,

or corridor porter.  Id.  In order to avoid a threatened misbehavior report, Blake agreed to

participate in the program.  Id.  ¶ 90.  During this time period, Blake continued to write

letters seeking explanation as to why he was enrolled in SOP, Blake's cell was searched and seven photographs were confiscated as being in violation of program policy, and two of Blake's books and magazines were confiscated for failure to comply with program policies.[5] Id. ¶¶ 91-93, 98, 105, 108.  After Blake appealed, the materials were provided to him.  Id. ¶ 120.

On March 24, 2008, Blake received a response from defendant Smith, Superintendent at Shawangunk, explaining that his placement in SOP "was the result of Central Office Guidance Unit."  Compl. ¶ 94.  This was confirmed by defendant Rudder, a psychologist, and non-party Rocky who informed Blake "that the final decision was up to Central Office" as to whether or not Blake was to be subject to SOP.  Id.  ¶ 95.  The Central Office also denied Blake's grievances alleging that promoting prostitution was not a sex crime stating that, while his conviction was not a sex offense crime under the Sex Offender Registration Act or eligible for civil management review by the Office of Mental Health, those conditions

---

[5] Liberally construing Blake's complaint, he may also allege a claim for defendants' theft of his property.  An inmate has a right not to be deprived of property without due process.  However, federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy which the plaintiff can pursue.  Hudson v. Palmer, 468 U.S. 517, 533 (1984). "An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims."  Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) (citations omitted); see also N.Y. C.P.L.R. §§ 7803, 7804.  State law also provides that "[a]ny claim for damages arising out of any act done . . . within the scope of . . . employment and in the discharge of the duties of any officer or employee of the department [of corrections] shall be brought and maintained in the court of claims as a claim against the state."  N.Y. Corr. Law § 24(2).  In this case, Blake contends that there was an unconstitutional deprivation when his photographs and magazines were confiscated.  Such claims fail as a matter of law for several reasons.  First, the Article 78 procedure exists and affords an adequate state court remedy.  Second, because Blake seeks monetary damages, he must pursue his claims here against New York State in the New York Court of Claims pursuant to Corrections Law § 24.  Thus, the proper venue to litigate such a claim is in state court.

were not a prerequisite for enrollment in SOCTP.  Dkt. No. 1-1 at 5.  "Rather, a number of

factors may serve as the basis for a referral . . . including conviction of a sex offense,

records indicating that a sexual offense occurred during the commission of the crime . . ., or

a guilty disposition of a sex offense . . . ."  Id.

On April 2, 2008, Blake was placed in keeplock[6] by Chiapperino for refusing to sign the

two aforementioned waivers despite Blake's participation in the SOCTP since mid-March.

Compl. ¶ 99.  The following day, Blake signed the waivers under duress.  Id. ¶ 100.  On

April 17, 2008, an unidentified defendant informed Blake that the SOCTP program did not

have any official policies or procedures.  Id. ¶ 102.[7]  Shortly thereafter, defendants Bode, a

social worker, and Fitchett provided all inmates with a memorandum entitled "Shawangunk

Correctional Facility Sex Offender Program Inmate Participation Handout," which purported

to contain the rules and regulations of the program until an official policy and procedure was

developed by the Central Office.  Id. ¶ 103.  On July 30, 2008, the Central Office issued a

decision in response to Blake's grievance, in which it advised that DOCS was revising

---

[6]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6.

[7] To the extent that, liberally construing Blake's complaint, he alleges that the failure to follow internal procedures at the SOCTP at Shawangunk resulted in a deprivation of due process, such contentions lack merit.  First, as discussed infra, Blake has no liberty interest in his participation in the sex offender program.  Second, the violation of a state procedural right does not automatically confer a federal right to due process.  See generally Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) ("The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action does not settle what protection the federal due process clause requires.") (internal quotation marks and citations omitted).  Thus, even if defendants did not comply with internal procedures during Blake's tenure at the treatment program, such transgressions are insufficient to establish a constitutional violation.

9

SOCTP guidelines and until those revisions were completed, the October 2001 Policies and

Procedures for the Sex Offender Counseling Program, were to be followed.  Dkt. No. 1-1 at

7.  Moreover, the decision indicated that the waiver of confidentiality form was being

reformatted and that, under the current state of the law,

> **[Blake] is not required to register as a sex offender**, nor is [he]
> subject to civil management review by the Office of Mental Health
> (OMH).  Accordingly, [Blake's] SOCTP records **are not subject to**
> **disclosure** to the Board of Examiners or OMH at this time . . .
> [S]uch records **would only be available to a community**
> **treatment provider in the future should such a provider engage**
> **[Blake] in treatment and request a copy of the SOCTP file.**

Id. (emphasis added to the original).

Beginning in May 2008, Blake wrote various defendants and filed grievances seeking to

have his record expunged of all references to SOP.  Compl. ¶¶ 106-107, 110-12, 114, 119,

121, 134.  Additionally, on May 25, 2008, Blake sent a letter to defendants Elfeldt, an SOP

coordinator, Rudder, and Fitchett seeking revocation of the previously signed waiver of

confidentiality pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"),

Pub.L. 104-191, 110 Stat.1936 (1996), and its privacy protections.  Id. ¶ 115.  Allowing

"outside agencies and any community organizations" access to records that purported

Blake as a sex offender "created a stigma . . . ."  Id.  On May 28, 2008, Blake was informed

by Fitchett and Rudder that Elfeldt was displeased with his revocation of the waiver of

confidentiality and was having Blake's waiver be investigated by the Office of the Counsel.

Id. ¶ 117.  On June 19, 2008, Blake received a letter from Elfeldt stating that Blake "would

need to make available his records to outside agencies and any community organization,

though [Blake] was not a sex offender by any New York state laws."  Id. ¶ 124.

10

On September 11, 2008, Blake reviewed his guidance file and found paperwork showing that, prior to filing a grievance against Altman, Altman had submitted referrals indicating that Blake did not need SOCTP.  Compl. ¶ 138; see also Dkt. No. 40-7 at 25 (inmate review worksheet dated January 3, 2005 indicating that SOCTP was not necessary), 26 (same), 28 (same).  Additionally, on May 12, 2005, Elfeldt requested that a Non-Sex Offender Referral be resubmitted in twenty-four months, but no such resubmission had occurred.  Compl. ¶ 138.  Blake noticed that portions of his file were missing, and when he inquired as to what was omitted, Townley indicated that McCullough had removed the sections.  Id.  On the following day Blake filed a grievance seeking disclosure of the sections of his file which were omitted.  Id. ¶ 139.  Blake was advised that another review would "be scheduled at which time a list of the withheld documents w[ould] be provided."  Dkt. No. 1-1 at 23.

In November 2008, Blake was informed that all he needed to do to complete the SOCTP was formulate a release plan.  Compl. at 144.  On November 14, 2008, Blake met with Rudder, Chiapperino, and McCullough to review the release plan previously submitted.  Id. ¶ 145.  Blake again complained that he should not have to participate in the SOCTP without a prior sexual transgression.  Id.  On November 28, 2008, the SOCTP furnished inmates the new waivers for confidentiality.  Id. ¶ 146.  Bode, Rudder, and Chiapperio approached Blake and asked him to sign the waivers, but he protested claiming he was no longer a participant as of November 14 when his release plan was submitted.  Id. ¶ 147.  Bode, Rudder, and Chiapperio informed Blake that he was not finished with the SOCTP until a transfer order was submitted, so Blake signed the waivers, still claiming that he was no longer a participant in the program.  Id. ¶¶ 147-48.  This action followed.

## II. Discussion

In his complaint, Blake alleges that defendants violated his First Amendment rights when he was designated to receive SOP after filing a grievance against Altman. Additionally, Blake alleges that his Eighth Amendment rights were violated when he was labeled a sex offender and required to participate in treatment. Similarly, Blake contends that his due process rights were violated when he was labeled a sex offender, suffered the stigma of that label, and failed to receive the appropriate due process prior to and after being labeled. Lastly, Blake contends that his Fourteenth Amendment rights to Equal Protection were violated when he was the only one of his co-defendants required to undergo SOP. Defendants move to dismiss on the grounds that (1) the statute of limitations bars Blake's claims, (2) Blake has failed to allege the personal involvement of certain supervisory defendants, (3) his constitutional claims are meritless, (4) Blake is not entitled to damages for emotional distress,[8] and (5) defendants are entitled to qualified immunity.[9]

---

[8] Pursuant to the Prisoner Litigation Reform Act of 1995 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Because Blake has failed to allege that he has suffered any concomitant physical injury, he is precluded from recovering any type of compensatory damages related to emotional distress. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[I]n the case of suits seeking damages for mental or emotional injuries . . . a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [and make a prior showing of a physical injury]."). Therefore, defendants' motion to dismiss on this ground should be granted.

[9] Defendants initially argued, and then retracted, a failure to prosecute claim on Blake. Defs. Mems. of Law (Dkt. Nos. 40-9) at 23, 56 at 1).

## A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

**B. Statute of Limitations**

Defendants move to dismiss Blake's Fourteenth Amendment claims on the ground that they are barred by the statute of limitations.[10]  While there is no provision in 42 U.S.C. § 1983 for the statute of limitations for a civil rights claim, § 1988 provides that state law may apply if not inconsistent with the Constitution or federal law. 42 U.S.C. § 1988(a); Moor v. County of Alameda, 411 U.S. 693, 702-03 (1973).  In New York, the applicable statute of limitations for a § 1983 suit is the three-year period governing suits to recover upon a liability created or imposed by statute. See Owens v. Okure, 488 U.S. 235, 249-51 (1989); Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970); N.Y. C.P.L.R. 214(2).  Federal law governs the determination of the accrual date for the purposes of a § 1983 claim.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  The claim accrues when the plaintiff "knows or has reason to know" of the harm. Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994). The critical time for accrual purposes is when a plaintiff is aware that he or she is suffering a wrong for which damages may be recovered in a civil rights action. Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).

While Blake was informed that he was being classified as a sex offender in April and May of 2005, Blake was not informed that his classification required participation in the SOP, and that refusal to do so could result in the denial of EEC, good time credits, and parole until September 2005.  Compl. ¶¶ 54-55, 60.  However, Blake did not suffer a concrete injury until the denial of his EEC and parole in February 2006. Id.  ¶¶ 68-69. As this moment represented the time upon which Blake knew of the alleged harm he had

---

[10] Defendants concede that this argument applies only to Blake's Fourteenth Amendment claims.  Defs. Mem. of Law (Dkt. No. 40-9) at 19.

suffered, this is when the statute of limitations began to run.  Blake filed his present

complaint in December 2008, three months before the expiration of the statute of

limitations.

Accordingly, defendants' motion on this ground should be denied.

### C. Personal Involvement

Defendants contend that Blake has failed to allege the personal involvement of

defendants Andrews, Fischer or Goord.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional
> violation;
>
> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of
> such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates
> who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

15

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Fischer, Goord, and Andrews cannot be named solely for their respective supervisory positions of Commissioner, Superintendent, and Deputy Superintendent.  Wright, 21 F.3d at 501.  Additionally, the mere receipt of letters is insufficient to establish personal involvement.  See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."); See Garrido v. Coughlin, 716 F. Supp. 98,  100 (S.D.N.Y.1989) (holding that Commissioner of DOCS not personally liable for ignoring plaintiff's letter of protest and request for an investigation).

Moreover, Goord's actions in referring grievance letters to Nuttall who ultimately responded to the grievance and continued communications with the inmate, is also insufficient to establish personal involvement.  See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) ("The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation.") (citing Ortiz-Rodriquez v. N.Y. State Dep't of Corr. Servs., 491 F  Supp. 2d 342, 347 (W.D.N.Y. 2007)). There are no allegations of negligent supervision, or creation of a hiring or retention policy which allowed for continuous constitutional violations to continue.

Blake also asserts that Andrews, Fischer, and Goord were grossly negligent in supervising Altman, but fails to advance any plausible facts which would establish a basis

16

for such negligence.  Compl. ¶ 149.  Such allegations, without more, are insufficient to establish personal involvement as all they proffer is liability based on the theory of *respondent superior*.  Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) ("[T]he doctrine of *respondeat superior* cannot be used to establish [personal] liability under § 1983.") (citations omitted).

Therefore, the defendants' motion to dismiss on this ground should be granted and defendants Andrews, Fischer, and Goord should be dismissed from the complaint.

## D. Retaliation

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against the plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. 2008).  Even if an actionable claim is stated, "defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct."  Vega v. Artus, 610 F. Supp. 2d 185, 206 (N.D.N.Y. 2009) (citations omitted).  Conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Blake contends that as a result of his grievance against defendant Altman, he suffered the adverse action of having the SOP included in his file.  To support such

contentions, Blake states that his file shows that prior to filing the grievance against Altman, there were multiple referrals submitted, at least one authored by Altman, indicating that Blake did not need the SOP.  Compl. ¶ 138.  Blake filed the grievance against Altman in April 2005 and was informed by Weingartner that his case was being referred for consideration of SOP in May 2005.  Compl. ¶¶ 53-55.  Thus, in less than one month after the grievance was filed, Blake's case underwent SOP review.

Initially it appears that defendants have provided substantial evidence that Blake's transfer to the SOP was imminent.  Blake's "offense did involve sexual offending behavior . . . based on [his] sexual exploitation of women for profit," so that, regardless of his grievance, defendants' would have recommended him for the SOP.  Dkt. No. 40-7 at 39; see also Dkt. No. 40-7 at 32.  Such contentions are further supported by the fact that Blake's placement in SOP was determined by the Central Office Guidance Unit, and not any of the named defendants.  Compl. ¶¶ 94-95; Dkt. No. 1-1 at 5. There are no facts proffered which plausibly suggest that the Central Office or Weingartner were aware of the grievance or that the grievance had any impact on Central Office's eventual decision to enroll Blake in SOP.

However, such contentions conflict with Blake's allegations that Blake was treated differently than his two co-defendants.  All three men were convicted of the same crime, and presumably incarcerated for the same duration, yet Blake was the only individual required to undergo the SOP and have parole conditions proposed upon his release.  Compl. § 75.  If defendants' were going to recommend individuals with Blake's conviction to the SOP, the other two co-defendants reasonably should have also been included in the rehabilitation but were not.  Such actions may suggest intentional adverse action against

18

Blake.

On this record and at this stage, therefore, defendants' motion as to this claim should be denied.


### E. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This prohibition extends to prison conditions. Horne v. Coughlin, 155 F.3d 26, 31 (2d Cir. 1998).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  This prong is satisfied by a showing that the "conditions are . . . totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain."  Tinsley v. Goord, No. 05-CV-3921, 2006 WL 2707324, at *3 (S.D.N.Y. Sept. 20, 2006) (citing Horne, 155 F.3d at 31) (internal quotation marks omitted).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Farmer, 511 U.S. at 834.

In this case, Blake alleges that any placement in sex offender training programs or setting special parole conditions of parole amounted to an infliction of cruel and unusual punishment.  However, courts have consistently found requiring participation in such programs constitutional.  A correctional institution's goal of rehabilitating inmates, and reducing rates of recidivism, by providing such treatment programs represent "important and laudable goals, and the institution of the program itself was well within the State's authority as part of its operation of correctional facilities. . . [Moreover,] the State's pursuit of

19

these goals or its administration of the SOTP [does not] . . . violate[] contemporary standards of decency." Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997); see also Tinsley, 2006 WL 2707324, at *3-*4 (holding that sex offender treatment status did not subject the inmate to sort of unnecessary or wanton infliction of pain). Thus, Blake is unable to state an Eighth Amendment claim here as a matter of law.

Accordingly, defendants' motion as to this claim should be granted.


## F. Fourteenth Amendment

### 1. Due Process

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life. See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

### a. Procedural Due Process

To state a claim for procedural due process, there must first be a liberty interest which requires protection.  See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  In this case, Blake contends that mandating the SOP, based on his conviction for promoting prostitution in the third degree,[11] was a violation of his liberty interest to remain free from a sex offender classification.  ABlake contends that he should have been provided procedural protections in connection with being recommended for sex offender training.

Where an individual, not convicted of an express sex offense, is then required to participate in a SOP, circuits have split as to whether or not a liberty interest exists for the inmate to be free from the label of a sex offender, required to participate in treatment.  Compare Coleman v. Dretke, 395 F.3d 216, 222-23 (5th Cir. 2004) (holding that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions" and categorizing the "compelled treatment on which [the inmate's] parole was conditioned," as

---

[11] "Effective January 1, 2000, promoting prostitution in the second degree became a sex offense . . . triggering [the Sex Offender Registration Act]'s requirements."  People v. Carey, 850 N.Y.S.2d 260, 261 (3d Dep't 2008).  However, promoting prostitution in the third degree does not triggers the Sex Offender Registration Act ("SORA").  Thus, while T promoting prostitution may constitute a sexual offense, it does not trigger the requirements of SORA.  If Blake's offense of conviction alone triggered SORA, SORA would have provided all procedural protections required in the event that a liberty interest was found.  Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir.1997).

qualitatively different from conditions imposed upon other inmates); Chambers v. Colorado Dep't of Corr., 205 F.3d 1237, 1242-43 (10th Cir. 2000) (holding that an inmate has right to procedural due process before good time credits are removed from him since "after five years of being labeled a sex offender without . . . admitting that status and with his receiving ten days of earned time credits a month, the . . . benefit [was removed] . . . implicat[ing] . . . a liberty interest in not being labeled a sex offender."); Kirby v. Siegelman, 195 F.3d 1285, 1291-92 (11th Cir. 1999) ("[Inmates still] retain[] a 'residuum of liberty' that would be infringed by classification as a sex offender without complying with minimum requirements of due process;" accordingly "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender."); Neal v. Shimoda, 131 F. 3d 818, 830 (9th Cir. 1997) ("[T]he stigmatizing consequences of the . . . 'sex offender' label couples with the subjection . . . to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations . . . that require procedural protections.") with Grennier v. Frank, 453 F.3d 442, 445 (7th Cir. 2006) (finding that a prisoner who was not convicted of a sex offense had no protected liberty interest in being free from sex offender classification upon parole); Gunderson v. Hvass, 339 F.3d 639 (8th Cir. 2003) (holding that registering as a sex offender and its impact on one's reputation, despite the lack of a sexual offense conviction, "is not sufficient to invoke the procedural protections of the due process clause.").

However, courts within the Second Circuit appear to be reaching a consensus that recommendations for sex offender classification and programming do not trigger due process rights. See Vega v. Lantz, No. 03-CV-2248, 2008 WL 3992651, at *15-17 (D. Conn. Aug. 25, 2008); Fitfield v. Eaton, No. 07-CV-6521L, 2009 WL 3429791, at *2-3

22

(W.D.N.Y. Oct. 20, 2009) (granting motion to dismiss inmate's claim that he was denied parole opportunities due to his refusal to participate in SOP because inmate had no liberty interest in parole, conditional release, discretionary good time credits, or choosing his programming); Tinsley, 2006 WL 2707324, at *5 (finding no constitutionally protected right, either federally or state-created, which allows "prisoners [to] . . . avoid classification as sex offenders or participat[e] in related treatment programs.").

It is undisputed that inmates have no constitutionally protected interest in parol, or other conditional release from prison, prior to the expiration of a valid sentence. Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). However, the holdings in Neal, Coleman, and Kirby found liberty interests because parole eligibility was preconditioned on the successful completion of the SOP. Kirby, 195 F.3d at 1288 (finding that inmate "must participate in group therapy sessions . . . as a prerequisite for parole eligibility."); Coleman, 395 F.3d at 222-23 ("[T]he Due Process Clause . . . provides Coleman with a liberty interest from freedom from stigma and compelled treatment on which his parole was conditioned . . . ."); Neal, 131 F.3d at 830.  In fact, Neal contemplated a situation identical to the present case whn it stated:

> [t]he liberty interest implicated by the establishment of the SOTP is not merely the requirement that sex offenders complete the specified treatment program.  If that were all that was at stake, we could probably not say that a liberty interest had been created, given the fact that prisons frequently maintain treatment and behavioral modification programs . . . that have long withstood legal challenge.

Neal, 131 F.3d at 830.

This follows the Second Circuit's holdings that inmates have no constitutionally protected liberty interest in internal classifications or eligibility for rehabilitative programs.

23

See Pugliese v. Nelson, 617 F.2d 916, 923 (2d Cir. 1980).  This is also consistent to the Second Circuit's holding that inmates have no constitutional right to discretionary good time release or participation in prison programs which expedite the date of release.  See Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credits they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here prison officials have discretion to determine whether an inmate . . . is eligible to earn good time credit."); see also N.Y. CORRECT. LAW § 803(a) (explaining that inmates may receive credit to reduce their sentence for "good behavior and efficient and willing performance . . . in an assigned treatment program [but] may [also have such credits] be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned.").

The instant case does not represent one in which parole eligibility was conditioned upon participation in and completion of the SOP.  First, Blake was recommended to attend SOP classes, but his participation and attendance were not mandatory.  Matos v. Goord, 27 A.D.3d 940, 941 (3d Dep't 2006) (explaining that an inmate "cannot be compelled to attend the [sex offender training] program.").  Second, Blake was not precluded from having his parole eligibility examined.  Blake was given multiple opportunities to have his parole reviewed, and the parole board declined to grant his parole based on a variety of reasons. Compl. ¶¶ 69, 78.  To the extent that Blake was denied earned eligibility or good time credits after receiving notice from defendants that failure to participate in his recommended SOP would result in such, Blake still has failed to state a constitutional claim as those

decisions to award such credits are discretionary.  See N.Y. Correct. Law § 803(a).[12]  Thus,

Blake's circumstances differed from that relied upon by multiple authorities to which he

cites.  Additionally, denial of Blake's motion is consistent with the authority cited by

defendants, as well as the well established case law, that inmates are not entitled to parole,

discretionary good time credits, or participation in programming.  Therefore, Blake has

failed to identify a liberty interest which would require procedural protections.

Furthermore, the Supreme Court has held that "[a] prison clinical rehabilitation program,

which is acknowledged to bear a rational relation to a legitimate penological objective, does

not . . .  constitute [an] atypical and significant hardship [ ] in relation to the ordinary

incidents of prison life."  McKune v. Lile, 536 U.S. 24, 37-38 (2002).  "Since 'most offenders

will eventually return to society, [a] paramount objective of the corrections system is the

rehabilitation of those committed to its custody.' " Id. at 36 (quoting Pell v. Procunier, 417

U.S. 817, 823 (1974)).  The SOP has been held to be such a program, especially in

instances such as the present where the conviction stemmed from a sexually based act.

See Johnson v. Baker, 108 F.3d 10, 11-12 (2d Cir. 1997) (referring to the SOP as

rehabilitative and rationally related to the State's interest in assisting inmates); Rizzuto v.

Goord, 34 A.D.3d 1164 (3d Dep't 2006) (finding that inmate's "engage[ment] in sexual

exploitation in connection with one of his criminal convictions,[ specifically the operation of a

prostitution ring, made] . . . the recommendation that he be required to participate in the

_____

    [12] To the extent that Blake argues "that he was barred from any *already-earned*
good time credit . . . , Section 1983 is not the proper vehicle to seek redress . . . and a
write of habeas corpus is a prisoner's sole recourse in challenging the procedures used to
deny him good-time credits."  Fitfield, 2009 WL 3429791, at *3 (internal quotation marks
and citations omitted).

sexual offender counseling program . . . rational . . . .").

   While Blake's conviction does not trigger SORA, it does constitute a sexually based crime whereupon Blake acted as a pimp, profiting off women selling themselves for sex. Dkt. No. 40-7 at 39 ("While it is understood that your instant offense is not a registerable sex offense . . . [it] did involve sexual offending behavior in which you profited from prostitution; therefore, based on your sexual exploitation of women for profit, the recommendation to participate in the [SOP] is appropriate . . . ").  This presents a situation similar to in Vega, where the Second Circuit determined that the conviction "could be found to reflect problematic sexual attitudes and behavior which justify labeling his crimes 'sexual offenses' . . . [supporting] the Department's determination that his convicted conduct is reasonably termed a 'sexual offense' . . . ." requiring treatment and rehabilitation.  Vega v. Lantz, ___ F.3d ___, 2010 WL 698384, at *5 (2d Cir. Mar. 2, 2010).  Moreover, it presents facts similar to those in Rizzuto.  Such conclusions by defendants represent a reasonable motivation for DOCS to require rehabilitation.  Blake's individual participation in such a program has already been judicially deemed legitimate and rational.  Compl. ¶ 61; Dkt. No. 40-8 at 2 ("[T]he court finds that the determination of the respondents as to both [ART and SOP] programs was rational and fully supported by the record below.")

   Accordingly, even viewing the allegations of the complaint in the light most favorable to Blake, there is no plausible set of facts which would establish a violation of his procedural due process rights.  Defendants' motion on this ground should be granted.

**b. Substantive Due Process[13]**

Liberally reading the complaint it also appears that Blake has alleged a substantive due process claim concerning his sex offender classification and recommendation for treatment. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . ." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted).  However, for the reasons discussed supra, enrollment in the SOP was not arbitrary, conscience-shocking, or oppressive, but rather was rationally related to a legitimate penological purpose and determined to be neither unnecessary nor painful.

Accordingly, defendants' motion to dismiss on this ground is granted.

---

[13] Blake contends that his retaliation claims come under a Fourteenth Amendment due process analysis.  Analysis may be made under either the Fourteenth or First Amendment as they are identical.  Blue v. Koren, 72 F.3d 1075, 1082 n.3 (2d Cir. 1995) ("[A] right to defend oneself . . . without being subjected to retaliation . . . may be easily derived either from the . . . Due Process Clause or from the First Amendment . . . .").  Accordingly, our analysis will proceed pursuant to the First Amendment.

27

**2. Stigma-Plus Claim**[14]

In order to plead a "stigma plus" claim, an individual must "allege (1) the utterance of a statement about [him or] her that is injurious to [his or] her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement."   Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks and citations omitted).   "The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made . . . only in private, ordinarily does not implicate a liberty interest."   Id. (citations omitted).   Moreover, there must be a plus factor, composed of "a specific and adverse action clearly restricting the plaintiff's liberty . . . ."   Id. at 87-88 (citations omitted).

In this case, Blake has failed to allege a sufficiently public statement which would constitute a stigma.   Blake's conviction, indisputably, does not require him to publicly register as a sex offender.   Dkt. No. 1-1 at 7.   Furthermore, Blake's records would only be released to subsequent providers from whom Blake chose to seek treatment and only upon request.   Id.   Thus, Blake's claim lacks the element of notoriety which would compel a

---

[14] Blake relies on Vega I to assert that "[b]eing classified in prison as a sex offender . . . causes a 'stigma-plus' . . . ."   Blake's Mem. of Law (Dkt. No. 52) at 9 (citing Vega, 2008 WL 3992651, at *14).   However, such reliance on the district court decision in Vega is misplaced because it was recently reversed.   2010 WL 698384.   The stigma-plus holding was reversed because Vega failed to proffer, or prove, that the claims that he committed a sexual offense were false.   Id. at *4-5.   Thus, Vega was not mischaracterized as a sex offender.   Id.   The same can be argued in the present case, where Blake's conviction of organizing and exploiting women and profiting from their actions of prostituting themselves, represented a sexual offense.   Additionally, the conviction has not been attacked, and any such attack would be belied by Blake's voluntary guilty plea to the charge.   Compl. ¶¶ 37-39.   Therefore, in addition to the lack of publicity required to prove a stigma-plus claim, Blake's claims also fail due to his failure to allege a statement injurious to his reputation which could be proven false.

finding of stigma.  See Gunderson, 339 F.3d at 644 (finding that where there is no "public

dissemination of . . . registration," and instead the information "in considered 'private data,'"

there has been a failure to satisfy the test).  Without such publicity, the "[d]amage to

reputation alone, . . . is [in]sufficient to invoke the procedural protections of the due process

clause."  Id.

Accordingly, defendants' motion on this ground should be granted.


### 3. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under

the law.  Essential to that protection is the guarantee that similarly situated persons

be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

(1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the

Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than

others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective
> adverse treatment of individuals compared with other similarly
> situated individuals if such selective treatment was based on
> impermissible considerations such as race, religion, intent to inhibit
> or punish the exercise of constitutional rights, or malicious or bad
> faith intent to injure a person.

Vegas v. Artus, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and

citations omitted).  With respect to prisoners, in order to establish an equal protection

violation, the plaintiff must show that "the disparity in treatment cannot survive the

appropriate level of scrutiny which . . . means that he must demonstrate that his treatment

was not reasonably related to any legitimate penological interests."  Phillips v. Girdich, 408

F.3d 124, 129 (2d Cir. 2005).

If an individual cannot "allege membership in [a protected] class, he or she can still prevail in . . . a class of one equal protection claim." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (internal quotation marks and citations omitted).  To succeed, a plaintiff must show "that [he] were intentionally treated differently from other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin, 468 F.3d 144, 158-59 (2d Cir. 2006).  Additionally, a plaintiff must establish an extremely high "level of similarity between plaintiffs and the persons with whom they compare themselves . . . ." Neilson, 409 F.3d at 104.

Blake has failed to establish membership in a protected class.  However, it appears that Blake has adequately alleged a class of one claim, namely that he was treated differently from two other individuals that were convicted, with him, of the same crime.  To satisfy a class of one claim, Blake must "allege (1) that [he was] intentionally treated differently . . . and (2) that the disparate treatment was either (a) irrational or wholly arbitrary or (b) motivated by animus." Assoko v. City of New York, 539 F. Supp. 2d 728, 735 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).  Viewing the facts in the light most favorable to Blake, it appears that his SOP conditions, while not irrational, were arbitrarily applied to Blake, as neither of his co-defendants were required to participate in similar programming.  Compl. ¶ 75.  Blake's co-defendants were incarcerated for substantially the same offenses, and presumably for a comparable amount of time, thus, the failure to also include them in the SOP and impose special parole conditions is indicative of plausible animus on the part of the defendants and arbitrary and discriminatory conduct.

Accordingly, defendants' motion as to this claim should be denied.

30

### G. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached with respect to Blake's Eighth Amendment allegations because, as discussed supra, it has not been shown that defendants violated Blake's constitutional rights.

### 1. Retaliation

It has been well-established law for decades that state actors cannot retaliate against

individuals for engaging in constitutionally protected conduct.  Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Such conduct has also been prohibited in prisons.  Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) (holding that interference with an inmate's "right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments," is protected by § 1983) (citations omitted).  Accordingly, the right of an inmate to file grievances without fear of reprisals was established long before Blake was incarcerated and subjected to the SOP.  In this case, viewing the allegations in the light most favorable to Blake, defendants took no actions which were reasonable in light of the well established law.  At this stage, the allegations suffice to merit discovery on this issue.

Accordingly, defendants' motion on this ground should be denied.


### 2. Stigma-Plus Due Process

Until its recent decision in Vega, the Second Circuit case law offered no guidance with respect to whether a liberty interest existed to remain free from being labeled a sex offender and referred to treatment.  See Vega, 2008 WL 3992651, at *18 (discussing the lack of precedent as "only recently [has the issued been] addressed by one Connecticut state court and one New York federal district court"); Tinsley, 2006 WL 2707324, at *4-*5 (explaining that the Second Circuit offers no guidance on whether a "prisoner's classification as a sex offender during imprisonment implicates a liberty interest . . . .," and noting that "nothing suggests that either New York state law or prison regulations have created a liberty interest in prisoners avoiding classification as sex offenders or participating in related treatment programs.") (citations omitted).  Thus, qualified immunity should be granted because there

32

was no well-established case law on point at the time of the conduct alleged in the complaint.  However, even if there was preexisting case law, as discussed supra, defendants' actions in placing Blake into treatment programs was consistent with defendants' duties to rehabilitate and prepare inmates for reintegration into society.  Thus, defendants acted reasonably in referring Blake  to SOP given his offense of conviction and goals of  rehabilitation.

However, qualified immunity protects defendants from an award of monetary damages on this claim but not from an award of injunctive relief barring Blake from receiving compensatory relief but still allowing the possibility of injunctive relief. See Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339, 346 (D. Conn.2001); see also Vega, 2008 WL 3992651, at *19.  Therefore, defendants motion as to Blake's stigma-plus claim on this ground should be granted as to his claim for damages against defendants in their individual capacities and denied as to his claim for injunctive relief.


### 3. Equal Protection

There is a well-established right to equal protection, ensuring that the government treat all similarly situated individuals the same at the time of the conduct alleged here.  City of Cleburne, Tex., 473 U.S. at 439.  Moreover, the safe harbors of the Equal Protection Clause have been afforded specifically to prisoners since at least 1995. Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  Thus, the right to equal treatment has been established far before Blake's incarceration or referral to the SOP.  In this case, viewing the allegations in the light most favorable to Blake, there are no actions which defendants engaged in which can be said to be reasonable in light of the well-established case law.

33

Accordingly, defendants' motion as to this claim should be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 40) be:

    1.  **GRANTED** as to:

        A. The Eighth Amendment claim and that claim should be **DISMISSED** in its entirety;

        B. All Fourteenth Amendment due process claims except for the stigma-plus claim for injunctive relief; and

        C. Defendants Andrews, Goord, and Fischer in all respects and those three defendants should be **DISMISSED** from this action in all respects; and

    2.  **DENIED** as to:

        A. The First Amendment retaliation claim;

        B. The Fourteenth Amendment stigma-plus due process claim for injunctive relief; and

        C. The Fourteenth Amendment equal protection claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the **Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  March 5, 2010
      Albany, New York

_____

David R. Homer
U.S. Magistrate Judge